Judge Wardlaw is with us by television. Can you hear us, Judge Wardlaw? Yes, I can hear perfectly. Thank you. All right. We understand counsel are ready to proceed, so the appellant may make his argument. Thank you. Good afternoon. May it please the Court. My name is James Patterson, and I represent the petitioner, Mr. Armando Navarro, in these proceedings. And I would like to try to reserve a few minutes for rebuttal, perhaps three minutes for rebuttal. I'll try to keep track of that as well. And I apologize for my voice. I have a bit of a cold that I'm trying to overcome, so I have some water here as well. As the Court is aware, this is a petition for review of a decision of the Board of Immigration Appeals affirming the immigration judge's determination that Mr. Navarro's 1999 accessory conviction constituted a crime involving moral turpitude and therefore disqualified him from – made him inadmissible, I should say, and disqualified him from all forms of relief from removal. That's significant to Mr. Navarro because he is married to a U.S. citizen, he has several U.S. citizen sons, he's lived here for more than 22 years, has quite a bit at stake. Do we know anything about the circumstances surrounding the underlying crime? What was he an accessory to, do we know? We don't know, Your Honor. There's something we do. There was a complaint for the unlawful possession and sale of methamphetamine, a controlled substance, to which he pleaded in Section 32, right? That's the complaint. And then handwritten on that complaint is it by interlineation PC-32. It's very cryptic. There is no information regarding the basis for that. But, yes, the original complaint. That's not totally unusual at 850 Bryant Street. I only do immigration law. I'm not sure how – I've not seen something where there's absolutely no factual basis. Admittedly, the original complaint had to do with a drug offense. Is there any dispute that we are talking about this solely as a categorical rather than a modified categorical? I don't believe that there is, Your Honor. I believe we're – regardless of whether you go the categorical approach or the modified categorical, I don't think the modified categorical approach helps the Court, to be honest with you, because we really don't have any knowledge. Don't we first have to determine whether it's a crime involving moral turpitude under Federal law, whether, regardless what the categories are, what the elements are under State law, is accessory after the fact under Federal law, a crime involving moral turpitude. Is that where we start? Your Honor, I believe we start with a generic definition. Actually, the generic definition would refer more to what is a crime involving moral turpitude, and then we compare the statute in question here, which is Penal Code Section 32. And we have a couple of Federal cases which say that harboring a criminal, harboring a felon, is a crime of moral turpitude. Not in the Ninth Circuit, but in the First Circuit and in the Fifth Circuit, don't we? There are cases that deal with harboring. They don't deal with accessory. And I believe there is a difference between the harboring statutes, between misprison of a felony, between obstruction of justice, and the accessory statute that we're looking at here. But don't they both deal with the question of impeding the due administration of justice, whether it be concealing the fact that a crime has been committed when they're under Federal law in Section 4, is an affirmative duty to tell the authorities about the crime of misprison of a felony, or in the case of accessory after the fact, helping to hide or somehow further concealing the commission of a criminal offense by taking some affirmative act to cover up the crime? I don't think I would agree with that entirely. I believe under the accessory statute, it is broader than just concealing or hiding a crime or a criminal. It could be helping the person to avoid capture by giving him food or shelter. But the question I asked is, isn't the legal policy behind both of those offenses a notion that we are punishing acts which impede the due administration of justice? I believe that would be a fair characterization. That, yes, we're concerned about impeding the due administration of justice. So why isn't Judge Bea's question correct, that we ought to look to the way that the First and the Fifth Circuits have defined it? I meant the Sixtieth Circuit. All right. The First and the Eighth Circuits have defined the crime to conclude that this is just like misprison of felony, and therefore, harboring or accessory after the fact is a crime of moral jurisdiction. And again, because I think those cases had different statutes before them, they were able to focus more on the concealment. And if you look at the language that the Court uses in those cases, they really do focus on the conduct. The question, for purposes of defining a crime of moral turpitude, is whether or not the actions are base or depraved or, in this case, impede the administration of justice. We don't really care whether it's done by hiding or not telling the authorities. The point is that the crimes hurt the administration of justice, and the question is whether or not that ought to be classified as a crime of moral turpitude. And I believe it shouldn't. And I don't believe those cases rely upon, again, the baseness or depravity of the crime. They rely upon fraudulent misconduct, concealing the act of a crime. But they could be done in two ways, right? There are two prongs. There are. It's either fraud or it's base or depraved. And so this would be under the second prong. Is that correct? Correct. And those other cases appear to be dealing with the fraud prong, with the first prong, and not the base or depraved. And that's what I believe this Court has to deal with today. In Cabral, it was somebody who was accessory after the fact to a murderer. That's not fraud. In Franklin, it was somebody who was accessory after the fact to an involuntary manslaughter. That's not fraud. And, again, those two cases are different as well. And I believe that the Court in those cases improperly focused on what the underlying crime was, that it was accessory to murder, accessory to a crime that resulted in the death of an individual. We don't have that here before us today. I believe if you just look at accessory by itself, does it by itself constitute fraud? They were looking at accessory after the crime. It's got to be a crime to be an accessory after the fact, right? Correct. But they, in my opinion, they unduly focus upon accessory to a murder. They're really looking at the murder. What is the least morally turpitudinous felony under California law that you can think of? The least morally turpitudinous felony. Something, the most innocuous felony you can think of in California, the farthest away from being a morally turpitudinous felony. I would have to say, Your Honor, because I've been focusing on case shoplifting a second or third time as a felony, that wouldn't actually be my first choice, again, because I've focused so much on the cases. I would say perhaps the malicious mischief felony. Okay, so someone who is under Section 32, an accessory after the fact of that one, and I assume California, in fact, I more than assume California as I understand it, includes within the scope of the statute someone who protects his child? Yes. So your argument is that someone who protects his child after having engaged in some sort of malicious mischief has not committed a morally turpitudinous crime? Correct. And we believe, again, that although that may not be the right thing to do in all circumstances, while that certainly violates this particular statute, it is not morally reprehensible. It is understandable, in fact, that a father or a mother would bring their son inside the home, give him food, and if the cops were out looking for him, perhaps not parade him right out there in the street. Although you have any cases at all which say that aiding and abetting a felon after the commission of an act, a felonious act, is not a crime of moral turpitude? Not per se aiding and abetting. I believe we're even close, right? Excuse me? Not per se nor even close. No. I believe there are cases, Board of Immigration Appeals cases, that deal with escape, which, again, would be punishable under this statute. But there are Board of Immigration Appeals cases that deal precisely with the point of accessory after the fact and hold it to be a crime of moral turpitude. Right? The most recent case, if that is what the Court is referring to, in Robles-Urea, I believe, refers, relies heavily upon the decision in Itani from, I believe, the Eleventh Circuit and this Court's decision in Navarro, and I believe unduly  And again, they focus not upon baseness or depravity. They focus on this contrary to the acceptable morals. In Sloan, there's an old BIA case that's held for years. Sloan, again, in my opinion, Sloan is decided before Bautista-Hernandez, and I think that's significant because in Sloan, the Attorney General really seems to be looking at the underlying crime again, which was a murder. He's looking at that. He really discusses it at some length, and then just kind of conclusorily says this is a crime involving moral turpitude, accessory to that particular crime. The only accessory can be a crime of moral turpitude, then, depending on what the underlying offense is. I don't believe so. No, that's no longer the correct analysis under even Board of Immigration Appeals precedent. Suppose the father hides the body of the murder victim and the son has committed the murder and he knows that. Would you consider that to be a crime of moral turpitude? Would the effect of the hiding of the body of the victim is to deprive the court of the corpus delicti and, therefore, make it difficult to prove that the murder has occurred? I don't know that that would be punishable under the accessory statute. Under the California statute you're talking about, would that be an offense? I don't believe – I believe that would be another crime, although, again, I'm not a criminal specialist. This California crime talks about aiding the principal in the felony. Not aiding in the felony. I believe it's aiding the principal. Aiding the principal who committed the felony. Correct. And if you aid someone who committed a felony with the intent that he may avoid trial or conviction, does that apply to a lawyer who tries to help him avoid a conviction? I would argue that – well, nobody's been prosecuted for that in my experience. It applies to anyone who helps somebody who's trying to avoid being found guilty. There aren't limitations in the statute. That's correct. And the – that statute has never been considered by the BIA or anyone else, nor has it ever been held to constitute moral trepidation. That's correct. It has not. Could you be charged under this section for helping a criminal defendant find exculpatory witnesses? My – you would be. And originally in my – I believe in my first argument I said that attorneys are helping criminals through the process all the time. We are aiding lots of them. Take the attorney off. Just assist. A green card holder helps someone find exculpatory witnesses. That would seem to be punishable under this statute. That would be aiding with the intent that said principal may avoid or escape from arrest, trial, conviction, or punishment. And so, again, you would be aiding someone to avoid conviction or punishment. And what case would you cite to us where a person was successfully prosecuted under that statute? I don't believe there are any, Your Honor. I'm saying the statute seems to be broad enough to encompass that. I don't know of any district attorneys who are prosecuting people for doing that. The nature of a categorical determination is that anybody charged with this is presumptively eligible for removal, right? That's correct. We don't actually look at the actions. Categorical means it requires no examination whatsoever of the underlying facts. That is correct. We don't look at the actions that actually constituted the crime. We look at the statutory definition of the crime. But your argument goes further than that, does it not, that if we went to the modified categorical approach, it still can't be a crime of moral turpitude no matter what the facts are? I believe that to be correct, Your Honor, yes. So if the father hides the murder weapon, if you don't like my hiding the body hypothetical, I assume he can be prosecuted as an accessory after the fact for throwing the gun off the bridge and thereby impeding the prosecution of his son. Is that a crime of moral turpitude? Your Honor, again, I would not concede that that's a crime involving moral turpitude There are issues again there of is that morally reprehensible? Is that more reprehensible than assault with a deadly weapon? Is that more reprehensible than burglary, than entering someone's home? Again, there is some gray area here, some fuzziness in determining what is bad enough, unfortunately, that the Court is faced with having to make that determination. In my opinion, again, what is punishable under this statute, when you look at it under the categorical approach, there are no elements here of fraud, there are no elements that need to be proven of baseness or of depravity. And so under the categorical approach as laid out by Taylor and Shepard, this would not be a crime involving moral turpitude. Does it matter whether the crime is malum in se versus malum prohibitum? Should we go back to the common law? Your Honor. Well, there again, counsel, when you answer that kind of question, are you talking about, because I'm confused based on some of your responses, are you talking about the underlying crime? Because as I understand it, for purposes of our decision today, we're making a decision that has nothing to do with what the underlying crime is. It just has to do with this statute. Is that correct? That is correct. Okay. So it doesn't matter at this point, you know, if it's a, if we do the worst crime or the least crime, it's just whether this statute categorically is a crime of moral turpitude. That is correct. Okay. Correct. Can you answer my question? Could you refresh my memory? I apologize. My question is whether or not it matters whether we would categorize the contract as malum in se versus malum prohibitum. There are cases out there that discuss that very distinction and seem to make that significant. In my opinion, it is not as significant as whether or not, again, under the categorical approach here, you look at the elements of accessory and see if there are elements that need to be proven or need to be admitted to have a conviction which qualify as a crime involving moral turpitude, baseness, vileness, fraud, depravity. There is no, there are no, none of those elements exist in this accessory statute. But wouldn't those elements be malum in se? They would be. And so, again, perhaps it's a distinction without a difference. The idea, I think, that Judge Taubman intimated a little while ago, that impeding the due administration of justice is malum in se and is depraved and based behavior in a societal way. Your Honor, I think, for example, this Court's decision in Goldestein where an individual was convicted of failing to comply with the reporting requirements for financial transactions, again, depriving the government of information, which is similar to what's done here, impeding the administration of justice, not allowing the government to see transactions that are more than $10,000 and there's an interest in the government seeing all of that, doing that was not considered to be a crime involving moral turpitude. Again, even though it impeded the administration of justice, it impeded the government from being able to administer the laws and to be able to see, perhaps, conspiracies or drug trafficking or money laundering or things like that, the Court found that that was not malum in se. I believe the discussion was made in that case, in fact, and, in fact, was not a crime involving moral turpitude. What do you make of the specific intent requirement in Penal Code 32? Your Honor, there is a specific intent. This isn't aiding someone in a vacuum. Again, you have to be aiding them with the intent that they may avoid escape, arrest, trial or conviction. Which is what he pleaded to. Correct. I mean, that's the language of the statute. Right. Again, I don't believe that that makes this, per se, a base, a vial or a depraved crime. That aiding someone, again, providing a meal to someone, providing shelter to a spouse who you know is on the lam and knowing that that will allow them to continue on is not morally reprehensible in every case. We can see circumstances where someone could say that that was actually the morally right thing to do, sort of a feed the sinner but hate the sin type of argument to take almost a religious analogy here. Counsel, doesn't the question of specific intent, though, also go to the question of whether it's malum in se or malum prohibitum? I can't think of an instance of malum prohibitum in which specific intent is required. Generally, when we have a specific intent crime, it is a malum in se crime. Generally, I believe that would be true, Your Honor. And again, I'm trying to think back to the Golderstein case. There the Court, there our Court said that you did not have to be, you did not have to know that you were defrauding the government in order to be convicted and decided that as evidence for why it was not. Correct. That you didn't need to have the specific intent to defraud. And I don't believe there's specific intent here to defraud. The specific intent is to knowing that they'll be able to perhaps avoid capture or conviction or punishment. It means that one must know that you're dealing with somebody who has committed a crime and that likely the authorities are looking for them, and that you've taken affirmative steps in order to conceal that from the authorities. I don't know that you need to know that they, that the authorities are looking for them. And again, I think that's a difference between this crime and obstruction of justice. You need to know that they've committed a felony, for sure, under Penal Code Section 32. But again, that concealment from the government, that the government is actually looking for the individual. They've committed a felony. Does that require, then, that they have been indicted? Or can you know that they've committed a felony simply by knowing what the underlying conduct was and being aware that that underlying conduct is likely to be prosecutable as a felony? You don't have to know that they've been indicted. In fact, I think you could be out with some friends, and somebody gets in a fight. That person commits an assault, and you help them. You put them in your car, and you take them off somewhere because you're not quite sure what just took place. You know that your friend hit somebody, and that's an assault, most likely a felony. I believe that would qualify for prosecution under this statute, again, without knowing that the authorities are actually going to be looking for that person or are looking for that person or that there's been an indictment or a complaint filed. Section 32 does have an intent requirement, specifically intent that said principal may avoid or escape from arrest, trial, conviction, or punishment. So you may not know that somebody's actively pursuing, but there has to be the intent to protect them from the pursuit if and when it comes. Correct. The intent to assist them to avoid, again, any of those four things, conviction, punishment, trial, or arrest. How does that differ from crimes like subornation of perjury or tampering with the jury, where the intent is the same? Wouldn't that be a crime of moral turpitude? Your Honor, again, without looking at specific statutes for subornation of perjury, my response would be that, no, there's a difference there. You are, in that case, engaging in clearly deceitful conduct. You are essentially encouraging someone to lie. I believe the deceit element there probably takes that back into the first procedure of the case. I think it's more of a fraud type of analysis rather than is that base vile depraved, which, again, I believe we're faced with here in this case. In this case, the BIA's decision was based entirely on base vile and depraved, wasn't it? They didn't – the BIA actually said – well, the BIA actually said nothing. Oh, the IJN. The immigration judge said this was contrary to the acceptable morals, contrary to the norms that one would expect. You have a felony. Correct. Which, again, is every other felony. He did not touch upon baseness or vileness, depravity. He didn't talk about that part of the definition. He really said this is contrary to the duty that you owe to others out there, and so, therefore, it's a crime involving moral turpitude. That's too narrow of a definition. Now, there are other specific intent crimes that are not crimes of moral turpitude, aren't there? You mentioned burglary. Burglary. Assault with a deadly weapon. Yes. Are those specific intent crimes? Your Honor, going back to – again, I believe I was surprised to learn that – yes, they are, actually. Let me say. They are not moral turpitude. Correct, under this Court's prior holdings. The – and, again, going back to one other point, I think it's important to note that although there are Board cases on Miss Prison which are more recent and which seem to rely, again, on the Itani case and on this Court's decision in this case, there are prior decisions of the Board which the Board has not overruled and didn't in the Roe v. Laserea case or in Sloan where the Board held that escape from jail or aiding, specifically aiding another to escape from jail, was not a crime involving moral turpitude. Going back to Matter of B and then also Matter of J, which were cited in our brief, Matter of J, where they actually, I believe, was a traditional jailbreak of cutting and filing through iron bars and escaping. That is, aiding the escape. That would be punishable under the statute the Board previously held that that did not involve moral turpitude. I think that's significant for this Court now to find that something that would be punishable under this statute has been found by the Board not to be a crime involving moral turpitude. Now, this Court to say that categorically this is a crime involving moral turpitude would be to go against that precedent, which, again, has never been overruled by the Board. Let me ask you this. I think I know the answer, but I want to make sure. Is Section 32 itself a felony? I'm sorry? Is violation of Section 32 itself a felony? If you're an accessory after the fact to a felony, is that a felony? My understanding is it can be a felony or a misdemeanor under 17b-4. Depending on what? I'm not quite sure what that depends on. My understanding is that it can be a WALBR, that they can charge it under 17b-4 as a misdemeanor. In this particular case, it was charged as a felony. I see. If I can just mention one more thing without opening a can of worms here. The government made mention of an attorney discipline case, Inree Young, where there was a Supreme Court decision in a State bar disciplinary proceeding. And, again, we believe that case is distinguishable because the analysis there was very different. They clearly were taking into account the fact that they were dealing with an attorney essentially holding that attorney to a higher standard. I believe that's confirmed by Inree Leszczynski, where the – in those cases, they're looking at moral turpitude as far as it relates to the fitness-to-practice law. And so, again, there are considerations there that are not present in this case. And, in fact, when you consider the Supreme Court's directive in Fong-Ha Tan v. Fallan that aliens, because so much is at stake in being deported, be given the benefit of the doubt in statutory construction, that that's also not present before a State bar court. We believe that that case is distinguishable enough to really not be of much use here. If there are no further questions, I will resume the remainder of my time. Oh, I'm sorry. Counsel, how do we analyze the fact that California law has defined this as a crime of moral turpitude? What do we do with that? And, again, I believe that's – are you referring to the Young case? Yes. Again, I don't believe that is significant for this Court. We are faced with it in a very different context. Again, in dealing with it in State bar disciplinary proceedings, the Court there made much of the fact that this was an attorney who knew that his client had been indicted. And I believe, again, it was a murder that he was aware had taken place, and they, again, tied the moral turpitude to that attorney's fitness to practice law. But don't we generally look at how the State has defined a crime? I think it can be instructive. I don't think, again, that it's very useful, that the analysis in the Young case is not useful to this Court making a determination here. Their discussion there doesn't involve the same types of factors. They don't – they focus more upon, again, the underlying crime, which, again, we've – under the categorical approach, we're not to do here. And they focus upon the attorney's responsibility and the fact that they're determining if somebody is fit to practice law and holding them essentially to a higher standard. And so, again, although it certainly is useful to see what another Court has done, I don't believe that it's instructive here or helpful. Counsel? Yes, Your Honor. Do you have any views as to whether there should be any agency deference accorded to the BIA in determining whether an accessory should be considered – an accessory conviction should be considered a crime involving moral turpitude? I don't believe there should be any deference here in this case. Again, this is a question of – The BIA considers as a crime involving moral turpitude? Your Honor, this is a determination of whether a California statute as a question of law is a crime involving moral turpitude. I believe this Court has – has always looked at those de novo. They – there is not a need here to defer to any particular expertise of the Board of Immigration Appeals in interpreting the immigration statute. This Court can look at the California statute and look at its own precedent, and I believe in deciding it consistent with the precedent here of this Court, make this determination. There's no need to defer to the Board, and especially not when the Board's most recent decision, in fact, seems to rely most heavily upon the decisions in Itani and, again, in this case, the – The Board hasn't decided this other than in the – this question of the California statute, other than in the IJ's decision, which was in streamlined or mainlined or whatever it is, because the Board didn't think it worthy of deciding. Correct. They've not – It wouldn't give much deference to something the Board thought wasn't a real issue. They've not passed on this statute. You're correct, Your Honor. No, on this statute. But they have passed on the – on similar statutes involving accessory after the fact in the first – And, again, there's – there's not a direct correlation. I believe there are differences in the decisions that they've made, and they rely heavily upon the misprison cases, and their analysis just isn't, to be quite honest, very deep. They don't go into any real deep legal analysis. You don't like those other circuit cases? I don't, but I also believe that they don't discuss baseness, depravity, vileness, any of that. They just talk about being contrary to the norms. You have about – we'll give you a minute on rebuttal, but we hope to use your time. I appreciate that, Your Honor. Thank you very much. Please, the Court. Good afternoon. I'm Francis W. Fraser on behalf of the Respondent. If I may, I'd first like to start with clarifying the Supreme Court, the California Supreme Court's decision in a matter of young that's been talked about a little bit here. It's not correct to say that the Supreme Court's characterization of accessory after the fact as a crime involving moral turpitude was based on the fact that it was conduct of an attorney. In fact, if you look at the opinion, there are two separate parts of it. You might analogize them to the – to the liability phase and the punishment phase. The liability phase was – was the conviction of accessory under Section 32 CIMT, and the Court found that it would. It said Petitioner's crime establishes that he assisted a person with the specific intent to help him avoid arrest and with the knowledge that the person had committed a felony. This crime necessarily involves moral turpitude since it requires that a party has a specific intent to impede justice. In the next paragraph of the opinion, where the Court is talking about whether or not to approve a disciplinary recommendation, that's where the Court start – the Supreme Court starts to go into the actual conduct of the attorney. That was not quite correct. After the sentences you read, they said an attorney convicted of this crime necessarily acts with conscious disregard of his obligation to uphold the law. We conclude that Petitioner's crime involved moral turpitude on its face. But it didn't say, Your Honor, respectfully, that only an attorney could be guilty of – Well, it didn't say only an attorney, but it didn't leave the discussion of the attorney and his crime until the next section. When it was discussing whether the attorney was guilty of committing a crime, it did it right in the next sentence after the ones you read. Well, I – I respectfully disagree. I read – I read the decision a little bit tighter than that. But I do read the decision differently. I read this as a decision about a disbarment of an attorney and what is – what is moral turpitude for an attorney who helps harbor a murderer or what are the other things that this attorney did. But in its finding regarding Section 32, where at least when we're in an immigration case under Taylor categorical analysis, we're not looking to the conduct of the attorney. What we have here is the Supreme Court finding as a matter of law that a violation of the statute is a crime involving moral turpitude. Taking that and putting it in the context of this kind of a case where we're not allowed to look at the motive or the underlying conduct, I think that's – that's a very helpful precedent. There are other precedents from – from the State of California, however, people versus attorneys. It – it – if I – if I may just – why – why as a matter of BIA policy, should it be irrelevant what felony that was being assisted or aided and – and violation of CPC 32? Well, it – it's – it's not. Why should it be irrelevant? Why should the underlying felony be irrelevant? That's – that's – that's this Court's case law, Your Honor. That's Taylor – that's Taylor's case law. That's the categorical approach. Well, that's the Supreme – I'm sorry. That's the Supreme Court's category. Yes. But I'm saying to the BIA, when the BIA in – in its discretion is deciding who should be in this country and who shouldn't be in this country, why, as a matter of policy, should it be irrelevant what the underlying felony is? I – I – I'm – I don't know really how to respond to that, Your Honor. The BIA and this Court have – have applied Taylor categorical approach in the same underlying conduct and the motive of the offender are irrelevant to the – to the discussion. It's – Well, I think – excuse me. I think Judge Wargill may be asking a different question. I'm not sure, but I – the same one I have is that we're talking about aiding – well, accessory after the fact. Why is the – why isn't the – the category of the initial crime irrelevant? Is that what you're asking? I'm trying to ask that. I think there's slight communication there. For example, let's take – let's take Gersh's case, the case where we say there's no – this is not a crime of moral turpitude, structuring financial transactions. You convict somebody of helping that – that defendant after the fact, perhaps taking down and making some filings or something, which one could arguably say concealing. Don't you find it odd that that is a crime – we would categorize that, assisting in this felony to be a crime of moral turpitude, but not the underlying crime? I think that's the question. Because that – that case was on the fraud side of the crime of moral turpitude definitional equation, not on the larger definition that – that is necessary in this case. Are you aware that the State Department has taken the view that – that Ward Law espoused and that it has interpreted the same provision as not applying where the underlying crime is not deemed to involve moral turpitude? Well, accessory after the fact is a separate violation that has – that is totally unrelated to the act of the primary offender. I don't understand that. But you don't – you don't – But all I ask is whether you knew that the State Department – I'm sorry. No, I am not aware of that. You were suggesting that under Taylor you couldn't do it, which isn't really correct. Taylor tells you how you evaluate a crime. It doesn't tell you, A, what the policy has to be, what kind of people you want to deport. Nor does it say you necessarily have to apply this where the underlying crime is not a crime of moral turpitude. Because unlike accessory before the fact, accessory after the fact is a totally separate criminal violation. The State Department regulations as being an accessory before or after the fact. And then it goes on where an alien has been convicted, attempts to convict, et cetera. If an accessory before or after the fact and the underlying crime is not deemed to involve moral turpitude, then the section INA would not be applicable. I'm not aware of that, Your Honor. I'm going to have to talk to those people. If I may for a moment, I'd like to go back to a few fundamentals about the jurisprudence surrounding the crime of moral turpitude about which the Board and this Court are in complete agreement. First of all, the term is undefined by statute. This Court has held that the crime of moral turpitude is undefined and undefinable, that it's amorphous and nebulous. Well, then why would this be base and vile? Could you do that? That goes to the second thing. Because the term is amorphous and nebulous, the definition upon which the Board and this Court, again, agree contains a great many descriptive phrases, not just depraved. When you see in this Court's cases, you never see the word depraved alone. You usually see it in conjunction with vile and base. And I think that's very interesting. When you look up those words in the definition in the dictionary, in my case the American Heritage Dictionary, you find that vile means depraved, noble, loathsome, disgusting. Base means low moral character, treacherous, contemptible. Depraved means morally corrupt, debased or perverted. Now, certainly there's overlap in those definitions, but there's also at least a nuance of difference. So if depraved were intended to be seized upon in isolation, what would be the point of having the other descriptive phrases? Any of them. Base, vile and depraved. Some felonies seem to be base, vile and depraved. Some aren't. How do we tell them apart? Well, I would urge you to apply not just those terms, but the entire definition of a CIMT. Can I ask you the following question? It requires a bit of a narrative, if you don't mind. Imagine a young woman. She's with her boyfriend. The boyfriend, outside of a bar, hits somebody pretty hard. Looks like a criminal assault. She says to the boyfriend, let's get out of here, as the sirens come in the background. She takes him home and she says, you better stay here tonight. Don't go outside. You're going to get in trouble. The next night, she comes to her father's house. And she says, Dad, they're after me because they want me to be a witness against him, and if they don't succeed in getting me to be a witness against him, they're going to charge me with a crime as a way of leveraging. Would you put me up for the night? Because I can drive back to Cambridge, Massachusetts, where the semester starts, in a couple of days, and therefore I think I can get away with this. When the father says, yes, you may spend the night with me, is that base, vile, depraved, or disgusting? If it reflects, and we'd have to know more about the case. I can make the story longer if you want. If it reflects a specific intent to impede justice. Yes, it does. That's part of the story. He is sheltering his only daughter. His wife has died 10 years before. She is entirely dependent upon him for the protection, and they're going to charge her only as a way of leveraging her to be a witness against him, but she seems to have committed a felony by protecting him the previous night. If his conduct, you're saying his conduct, meets each of the four elements of the accessory conviction, that it contains a specific intent to impede justice, there's an affirmative act of concealment, then my answer has to be yes. Now, are you a father? And therefore, it is inherently. Let me ask you this. Are you a father? I am. Two daughters. When your daughter comes home and gives you that story, what will you do? I will probably be found guilty of accessory after the fact. As I think we all would be. As I think we all would be. Yes. But unfortunately. See, that doesn't indicate. We can give many, many examples. Why the modified categorical approach is the one that ought to be used here. I'm sorry. The modified categorical approach rather than the categorical approach should apply when we're talking about the statute. You can come up with a lot of scenarios where the underlying crime is not a crime of moral interpretation. It may be barely a felony. And you can come up with modest attempts that someone might construe as aiding in some way that would impact. It may be a crime that we've declared not to be constitutional. Would the government in that case position still be that accessory after the fact is moral interpretation, but the crime is not? If the conviction records indicated a specific intent to impede justice, yes. If the conviction records reflected an affirmative act of concealment of a felon from authorities, then the answer would have to be yes, because it's inherent in the statute. And that's the only reason the modified approach. Let's take the facts of Goldenstein again. I'm just pronouncing it. Where you've got somebody who's structuring a financial transaction to avoid currency reporting requirements. Yes. We said that's not a crime of moral interpretation. Because it wasn't fraud. Well, but the Secretary takes it down. She knows that the financial transaction has been structured this way. It goes down and files it. One could argue that that is accessory after the crime has been committed. And yet, there's really no moral difference in what they're doing. Well, I don't know how to answer that. Again, to say that that was, that case was evaluated under the fraud standard, not the. No, but it was evaluated under the fraud standard. But she is not, she gets convicted of being an accessory after the fact, which has nothing to do with it. By saying that was under the fraud standard, you seem to be saying, well, we really ought to look at the underlying conduct. No. Why is she more morally culpable than he is? Because her conduct reflects a specific intent to impede justice. No less than misprision of felony or harboring a fugitive or obstruction of justice under the other statutes that have been addressed by the BIA and the First, Eleventh, Fifth Circuits that we cited in our brief. Each of those, each of those different kinds of convictions shared one thing in common, and that's that they, each of them require, absolutely require an affirmative act of concealment of a felony from the authorities. Accessory after the fact, no less so than those others. Mr. Frazier, do any of these determinations affect the exercise of discretion by the Attorney General to grant relief that the alien is seeking, or is this purely a legal issue as to whether or not there's a statutory bar? The latter, Your Honor. And this statute can be applied, whether or not the underlying defendant has been convicted of the felony. So someone can be acquitted of an underlying crime, and yet you can have a conviction for a system, right? I think you're right, Your Honor. The primary offender might have been acquitted because what the statute requires only is knowledge that said principal has committed such felony or been charged leaves the door open to an offense. So they're charged and then the charges are dismissed. I wanted to, if I, well, first of all, Judge B, you asked about deference under Chevron and Brand X. You guys need to get a memo out in the department that's pronounced bad. I'm sorry. I apologize. You won't be the first and last. Judge Bea, I apologize. This Court should defer to the BIA's very recent decision in matter of Robles because, as I indicated earlier, misprision of felony contains the same requisite affirmative act of concealment that accessory after the fact does. Now, the suggestion was made that the Board reach this decision relying solely on the panel decision in this case and the Eleventh Circus decision in Itani. That's not true. It also relied on its own precedent directed at obstruction of justice in, well, in the case of Robles.  The Board had a precedent directed at obstruction of justice in the case of Robles. So the interesting thing is that it overruled that. But only part of it, Your Honor. There were two aspects of matter of Sloan. The Attorney General's decision found that obstruction of justice was a CIMT and left intact the misprision aspect, which the Board then overturned in matter of Robles. But for almost 40 years, we apparently had on the books that accessory after the fact was morally turpitudinous, according to the Attorney General, but misprision of felony was not. That's correct. How do you account for that? Because you're now telling me they're essentially the same thing. Because the Board has held that the nature of the crime is measured against contemporary moral standards and may be susceptible to change based on the prevailing views of society and requires a case-by-case approach. It said that in matter of Torres Varela. Yes, I understand that. But you're asking me to defer to an administration that's had this disparity between treatment of or characterization of misprision of felony and accessory after the fact for 40 years, and now finally in the last year it says really they're kind of the same thing. And I'm supposed to defer as if this is a sensible legal analysis to which, you know, they're     Yes, I did. I thought this through. You thought this through? Respectfully, yes, because the decision says on its face we now have the benefit of 50 years of jurisprudence, both from our own jurisprudence and the jurisprudence from the court of appeals. What is the crime of moral turpitude? It's not cast in concrete. And I would urge you respectfully, yes, to defer to the board's change of mind, if you will, reflecting contemporary community standards. Can we have higher moral standards now than before? I don't know how to answer that. I'll be wrong either way I go. But that was what your argument was. This is the daughter that you'll have to ask the daughter that I would defend. But don't you find there's a little bit of a disconnect between the idea that moral turpitude can change on a case-by-case basis in the BIA's judgment based on individual facts, but that we have to take a categorical approach to the California statute? Yes, I do. I wish that the analysis were tidier than it is. In fact, what is the crime of moral turpitude is different than Corona Sanchez, I think, was the case. The question was what is the theft defense? That was a neater and tidier thing than is trying to discern what is a crime involving moral turpitude. And it's the difficulty in that discernment, which I think has led to the multitude of descriptive phrases in the definition, in addition to vile, base, depraved, that the adjudicator can turn to. Haven't we been told since 1951 how to determine whether a crime is a crime of moral turpitude in DeGeorge v. Jordan? Yes. And that's really where it all started. We're told to look to judicial decisions and nothing else. Yes, that's correct. And the Court pointed out that the term first made its way into immigration law in 1891. So I guess in response to the earlier question, have contemporary community standards changed since 1891, I think I can say without fear of contradiction that, yes, they  have. And thank goodness that we don't in every respect view everything the same way that we did then, especially when we're trying to discern what involves moral turpitude. What's the moral turpitude here? The moral turpitude here is committing accessory after the fact which requires as a necessary element an affirmative act of concealment of a felony from the authorities. Obstruction of justice. So how do we know there was a concealment of a felony here? Because he pled guilty to it, Your Honor. He pled guilty. The Petitioner pled guilty to the crime. But when you're applying the – when you're applying the falsified approach, you don't look to the other allegations in the information or the indictment. That's correct. This was just done very hastily. They made a deal with them. Put five in there, right? Put a five in there, and they put in Penal Code Section 32. That's all we know. It was part of a plea agreement. You're correct, Your Honor. We don't know what it was. You're correct. This guy could have been entirely innocent. Then he shouldn't have been counseled to the plea agreement. They want to get the thing over with, and he's going to get a misdemeanor, and so he does it. Your Honor, we don't know what happened in that courtroom. We don't know what happened. So how can we say there's moral turpitude? Well, because he pled guilty to the crime of accessory after the fact. He pled guilty to it. That forecloses any that I had my fingers crossed or that I didn't mean it. If you have someone who comes here illegally and he goes into a church and the priest gives him something to eat and the priest knows that he's here illegal, is the priest guilty of a crime of moral turpitude? Yes. The Supreme Court in the Roberts case that was cited by the panel majority found that concealment of a crime has historically been against public policy. Concealment of a crime. The question that you were asked is if someone, a priest, gives shelter or comfort or food to someone he knows is here illegally, he's committing a crime. Is that a crime of moral turpitude? If it didn't involve a specific intent, then no. Specific intent to what? To obstruct justice. Well, no, but that isn't what the statute says here. No, but that's how it's been interpreted by the statute. No, but you say it aids a principle. Aids a principle. The California courts have recognized a specific intent requirement on it, Your Honor, and we would urge you to. Well, but my only point is you keep using the word conceals, and actually aids is part of that equation, too. Correct. And so you could be convicted in California if you're giving shelter, and as long as the other intent requirements are met. But regardless of whether we're talking about aiding or harboring or concealing, the people versus duty held that any kind of overt or affirmative assistance to a known felon may fall within these terms. The answer to the question is yes. The priest who aids the illegal alien by giving him shelter in the church is guilty of moral turpitude. If there is an affirmative act of concealment and a specific intent to impede justice, then I have to say yes, as I did to the other hypotheticals. And we should not uphold this unless we believe that that would be the priest who does that is guilty of a crime of moral turpitude. If we disagree with that, then under the categorical approach, we cannot uphold your view of the statute. Well, that would be true. So the nuns and the sound of music are in real trouble. I'm sorry, Your Honor? The nuns and the sound of music are in real trouble here. What happens if we come out not to agree with you on the categorical approach? That's the end of it, Your Honor, because neither the immigration judge or the BIA or the panel majority applied a modified categorical approach. That's not before this Court. So that would be the end of it in this case. In this case. Not other cases. I'm sorry? It would work in other cases. Certainly. It could. Certainly. That's because we don't know the underlying facts. Isn't that correct? Well, the underlying facts, even under modified categorical approaches, I understand it, still aren't germane. You're only entitled under that alternative analysis to look at certain specific conviction records. You just look at the record. There is jurisprudence on what part, what conviction records can be turned to. The plea agreement, I think the plea colloquy, the indictment, and there are one or two others. It's very narrow. You don't have those here? No, we don't here. Well, we have some in there. Yes, there are some in the record. But the IJ did not make an alternative modified categorical finding, nor did the panel in this case. So we wouldn't send it back for that determination? Well, I have to say that technically, yes, because I have spent years of my life litigating Ventura-type issues, and so under Ventura and Thomas, the answer to your question for me has to be yes, because they weren't addressed administratively. Would the Board have the authority to remand it back to the immigration judge for further hearings on a modified categorical finding? There could be. And it could be that either the immigration judge's response here or the agency could ask for a continuance to go back and see if perhaps there was in the plea transcript a colloquy that explained what exactly happened. We have no reason to believe you have those records that would establish a categorical case under the categorical approach, the non-categorical approach. You have no reason to believe that they exist, that they might not exist, or that they might not be. And you have never either briefed or argued or requested the Court, the panel below or this Court? That's correct. So we don't have a Ventura remand request in front of us? We did not urge the Court in our briefing in this case to remand it. That's the short answer to that. We have this rule of putting it away, right? Counsel? I'm sorry. Yes, Your Honor. I have a question. So you just said you litigated this Ventura remand issue for years. So I'm just curious. So in this, what is your view of what should be remanded under Ventura? What types of questions? Well, if remand had been raised in our briefs, then the remand might be to reopen before the immigration judge so that the agency might go back to the convicting the state convicting court and see if records do exist that were not previously produced that might shed some light on this. But if the Court chose not to do it in the first place, I mean, it had it available to do it in the first place. I'm open, really open. This is not a trick question. The IJA and the BIA had it available for them. They had some documents in the record to do that at the time. Now, why under Ventura are we supposed to give them a second chance, provided you had raised it? Your Honor, that's an excellent question. I can only tell you that I have heard firsthand from INS, now DHS, trial attorneys that obtaining conviction records is extraordinarily difficult. And it's not the ---- If they wanted to put you to that trouble, that would be. Yes. Your Honor, as I said earlier, we did not argue a remand in our briefs. And in good faith, I can't bring it up on bonk oral argument for the first time, and I wouldn't presume to do so. Okay. I believe my time has expired. Thank you very much. Thank you. Thank you. And to be honest, after the nuns from the Sound of Music being in trouble, I don't know that I can add anything to the argument here. I would just note that Congress has not made every crime a deportable offense or an inadmissible offense. It's just crimes of moral turpitude. There is a distinction here that needs to be made, and that the elements of this crime of accessory are not, in and of themselves, per se, categorically base, vile, depraved. They are not cruel or violent. It doesn't require any of those elements. Providing shelter to a friend, to a daughter, to the von Trapp family does not require baseness, vileness. Suppose we disagree with your view of the Young case, which expressly held this to be moral turpitude as a matter of California law. Then what? If you disagree that that case is limited to attorney discipline, I believe, again, it's instructive to this Court. It's not binding upon this Court any more than the BIA's decision on the Miss Prison case. Do you view the Young case as being a categorical decision, or does it seem to me it was more of a modified categorical determination to the facts of that case? Yes, Your Honor. They looked at the underlying facts of the case and the circumstances. How can Young be all that instructive? That is to say, it's a Federal definition for our purposes, what is or is not moral turpitude, and if California chooses to define it differently, so be it. Correct, Your Honor. I don't believe that it's binding or necessarily instructive. Thank you. Thank you, counsel. The Court appreciates the quality of argument presented in the case and that it is submitted for decision. This concludes the Court's calendar for this session, and the Court stands adjourned. Thank you.
judges: Schroeder, Pregerson, Reinhardt, Kozinski, O'scannlain, Hawkins, Thomas, Wardlaw, W.fletcher, Paez, Tallman, Rawlinson, Clifton, Bybee, Bea